# EXHIBIT G

ENDORSEMENT ATTACHED TO AND
MADE A PART OF TITLE INSURANCE COMMITMENT NUMBER: 250885ST
ISSUED BY



| | |
|---|---|
| **Parcel No.:** | 102-22-057 through 102-22-061, 102-22-003 through 102-22-012, and 102-22-014 through 102 |
| **Effective Date:** | June 19, 2025 |
| **Property Address:** | 1701 East 12th Street |
| | Cleveland, OH 44114 |

The Policy Amount to be issued shall be $73,873,511.00 or the amount of the successful bid at judicial sale, whichever is greater.

As required under Ohio Revised Code 2329.191(C), the street address of the real estate is:

1701 East 12th Street
Cleveland, OH 44114

Notwithstanding any provision to the contrary, all liability and obligation under the Commitment shall cease and terminate thirty (30) days after the recordation of the deed by the officer who makes the sale to the successful bidder at judicial sale, pursuant to Ohio Revised Code 2329.191(C).

This endorsement is issued as part of the Commitment. Except as it expressly states, it does not (i) modify any of the terms and provisions of the Commitment, (ii) modify any prior endorsements, (iii) extend the Date of Commitment, or (iv) increase the Amount of Insurance. To the extent a provision of the Commitment or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all the terms and provision of the Commitment and of any prior endorsements.

Signed under seal for the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

Countersigned by:

_____
Authorized Countersignature

Stewart Title Company
Company Name

Cleveland, OH
City, State

_____
Frederick H. Eppinger
President and CEO

_____
David Hisey
Secretary

**File number: 250885ST**

## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
### STEWART TITLE GUARANTY COMPANY

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, **Stewart Title Guaranty Company, a Texas corporation (the "Company")**, commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

Countersigned by:

Authorized Countersignature

Stewart Title Company
Company Name

Cleveland, OH
City, State

Frederick H. Eppinger
President and CEO

David Hisey
Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

**COMMITMENT CONDITIONS**

1. DEFINITIONS
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that under applicable law illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.
   i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.
   j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I—Requirements; and
   f. Schedule B, Part II—Exceptions; and
   g. a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



5. **LIMITATIONS OF LIABILITY**

    a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:

        i. comply with the Schedule B, Part I—Requirements;

        ii. eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or

        iii. acquire the Title or create the Mortgage covered by this Commitment.

    b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

    c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

    d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.

    e. The Company is not liable for the content of the Transaction Identification Data, if any.

    f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

    g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM**

    a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

    b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

    c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    d. The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    e. Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company

    f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7. **IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8. **PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9. **CLAIMS PROCEDURES**

This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

10.  **CLASS ACTION**
     ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11.  **ARBITRATION**
     The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

### STEWART TITLE GUARANTY COMPANY

All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to it at: Stewart Title Guaranty Company, P.O. Box 2029, Houston, Texas 77252-2029.

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**
Issuing Agent: Stewart Title Company
Issuing Office: 20445 Emerald Parkway, #200, Cleveland, OH 44135
Issuing Office's ALTA Registry ID: 1051881
Loan ID Number:
Issuing Office File Number: 250885ST
Property Address: 1701 East 12th Street Cleveland, OH 44114
Revision Number: 2

## SCHEDULE A

1.  Commitment Date: **June 19, 2025**, at **7:00 AM**

2.  Policy to be Issued:

    (a)  ALTA® 2021 Owner's Policy

        Proposed Insured: **TO BE DETERMINED AT SHERIFF'S SALE**

        Proposed Policy Amount: **TO BE DETERMINED AT SHERIFF'S SALE**

3.  The estate or interest in the Land at the Commitment Date is: **Fee Simple**

4.  Title to the **Fee Simple** estate or interest in the Land is at the Commitment Date vested in:

    **Reserve Apartments, Ltd., an Ohio limited liability company, as to Parcel Nos. 1-5, via Limited Warranty Deed recorded October 5, 2012 as AFN 201210050465 of Cuyahoga County Records.**

    **&**

    **Reserve Square Apartments, Ltd., an Ohio limited liability company, as to Parcel No. 6, via Limited Warranty Deed recorded August 30, 2005 as AFN 200508300011 of Cuyahoga County Records.**

5.  The Land is described as follows:
    **SEE ATTACHED EXHIBIT "A"**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



File No.: **250885ST**

## EXHIBIT A

The Land is described as follows:

**PARCEL NO. 1:**

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot Nos. 164, 165, 166 and 167, part of Payne Avenue, N.E., 80 feet wide and part of Walnut Avenue, N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio, June 3, 1968 and further known as being part of the hereinafter described premises extending above a horizontal plane at elevation 699.75 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 777.90 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Southeasterly line of Superior Avenue N.E., 132 feet wide, at its intersection with the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Course No. 1: Thence North 55° 42' 39" East along said Southeasterly line of Superior Avenue N.E., 78.78 feet;

Course No. 2: Thence South 34° 25' 04" East, 35.40 feet;

Course No. 3: Thence South 55° 54' 48" West, 9.00 feet;

Course No. 4: Thence South 34° 33' 44" East, 119.40 feet;

Course No. 5: Thence North 55° 56' 33" East, 2.43 feet, said point being the most Westerly corner of Parcel No. 2, hereinafter described;

Course No. 6: Thence South 34° 29' 32" East, along a Southwesterly line of said Parcel 2 in Course No. 10 and the Southeasterly prolongation thereof, 78.00 feet;

Course No. 7: Thence South 55° 54' 48" West, 3.78 feet;

Course No. 8: Thence South 34° 06' 36" East, 198.55 feet to a point in the Northwesterly line of Chester Avenue N.E., 100 feet wide, as shown on the Dedication Plat in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Course No. 9: Thence South 55° 48' 37" West along said Northwesterly line of Chester Avenue N.E., 70.27 feet to its intersection with the aforementioned Northeasterly line of East 12th Street;

Course No. 10: Thence North 34° 05' 12" West along said Northeasterly line of East 12th Street, 431.18 feet to the place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated June, 1993, be the same more or less, but subject to all legal highways.

Permanent Parcel No.: 102-22-057

**PARCEL NO. 2:**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot Nos. 166 and 167, part of Payne Avenue N.E., 80 feet wide and part of Walnut Avenue N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio, June 3, 1968 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 701.75 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 716 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Southeasterly line of Superior Avenue N.E., 132 feet wide, at its intersection with the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat, recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Thence North 55° 42' 39" East along said Southeasterly line of Superior Avenue N.E., 78.78 feet;

Thence South 34° 25' 04" East, 35.40 feet;

Thence South 55° 54' 48" West, 9 feet;

Thence South 34° 33' 44" East, 119.40 feet;

Thence North 55° 56' 33" East, 2.43 feet to the principal place of beginning, said point being a Northeasterly corner of Parcel 1, heretofore described;

Course No. 1: Thence North 55° 56' 33" East, 55.98 feet;

Course No. 2: Thence North 34° 01' 53" West, 113.56 feet;

Course No. 3: Thence North 55° 54' 18" East, 67.96 feet;

Course No. 4: Thence South 34° 05' 12" East, 3.23 feet;

Course No. 5: Thence North 55° 54' 48" East, 9.03 feet;

Course No. 6: Thence South 34° 03' 43" East, 132.34 feet;

Course No. 7: Thence South 55° 54' 48" West, 6.14 feet;

Course No. 8: Thence South 34° 05' 12" East, 32.06 feet;

Course No. 9: Thence South 55° 59' 09" West, 126.50 feet to a point in the Northeasterly line of aforementioned Parcel 1 in Course No. 6;

Course No. 10: Thence North 34° 29' 32" West along said Northeasterly line of Parcel 1, 53.92 feet to the principal place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated June, 1993, be the same more or less, but subject to all legal highways.

Permanent Parcel No.: 102-22-058


PARCEL NO. 3:

Situated in the City of Cleveland, County of Cuyahoga, State of Ohio and known as being part of Two Acre Lot No.

*This page is a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



166 and part of Walnut Avenue N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio June 3, 1968 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 647.50 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 662.00 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records at the point distant South 34° 05' 12" East 184 feet as measured along said Northeasterly line of East 12th Street, from its intersection with the Southeasterly line of Superior Avenue N.E., 132 feet wide;

Course No. 1: Thence North 55° 54' 48" East, 2.67 feet;

Course No. 2: Thence South 34° 05' 12" East, 7.90 feet;

Course No. 3: Thence North 55° 54' 48" East, 6.11 feet;

Course No. 4: Thence North 34° 05' 12" West, 0.90 feet;

Course No. 5: Thence North 55° 54' 48" East, 15.66 feet;

Course No. 6: Thence South 34° 05' 12" East, 0.75 feet;

Course No. 7: Thence North 55° 54' 48" East, 2.76 feet;

Course No. 8: Thence South 34° 05' 12" East, 6.36 feet;

Course No. 9: Thence South 55° 54' 48" West, 2.76 feet;

Course No. 10: Thence South 34° 05' 12" East, 0.75 feet;

Course No. 11: Thence South 55° 54' 48" West, 8.83 feet;

Course No. 12: Thence South 34° 05' 12" East, 6.44 feet;

Course No. 13: Thence South 55° 54' 48" West, 12.94 feet;

Course No. 14: Thence South 34° 05' 12" East, 0.47 feet;

Course No. 15: Thence South 55° 54' 48" West, 2.67 feet to the aforementioned Northeasterly line of East 12th Street;

Course No. 16: Thence North 34° 05' 12" West along the Northwesterly line of East 12th Street, 21.77 feet to the place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated December, 1993, be the same more or less, but subject to all legal highways.

The planes above referred to in the legal description vary in elevation at different locations with the above described premises and the elevation of said planes serving to determine the land being conveyed herein are based upon:

a) Elevations previously established of recorded as referred to herein;

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



b) Elevations established and monumented by survey as referred to herein, and
c) Elevations that are based upon existing construction plans and which can be monumented as may be required by re-survey upon completion of construction by survey, affidavit by surveyor or other suitable means.

In every case the planes are to be revised to coincide with either the lower surface of the fire proofing on the building girders as erected or with the surfaces of public ways when explicitly referred to above.

Said revisions shall be liberally construed so as to eliminate all gaps and/or overlaps between the parcels of land adjacent to said planes.

Permanent Parcel No.: 102-22-059

PARCEL NO. 4:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot No. 166 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 647.50 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 662 feet, U.S. Government Datum Level, bounded and described as follows:

Beginning at the Southeasterly corner of Parcel 3, Course No. 12 according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in June, 1993;

Course No. 1: Thence continuing South 34° 05' 12" East along the Southeasterly prolongation of Course No. 12 in said Parcel 3, 3.38 feet;

Course No. 2: Thence South 55° 54' 18" West, 0.24 feet;

Course No. 3: Thence South 34° 05' 12" East, 0.43 feet;

Course No. 4: Thence North 55° 54' 48" East, 8.82 feet;

Course No. 5: Thence South 34° 05' 12" East, 4.07 feet;

Course No. 6: Thence South 55° 54' 48" West, 1.40 feet;

Course No. 7: Thence South 34° 05' 12" East, 0.91 feet;

Course No. 8: Thence South 55° 54' 48" West, 12.37 feet;

Course No. 9: Thence North 34° 05' 12" West, 4.98 feet;

Course No. 10: Thence North 55° 54' 48" East, 1.94 feet;

Course No. 11: Thence North 34° 05' 12" West, 0.43 feet;

Course No. 12: Thence South 55° 54' 48" West, 0.37 feet;

Course No. 13: Thence North 34° 05' 12" West, 3.38 feet to a point in Course No. 13 of the aforementioned Parcel 3;

Course No. 14: Thence North 55° 54' 48" East along Course No. 13 of said Parcel 3, 3.64 feet to the

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



place of beginning, containing 81 square feet, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in April, 1998, be the same more or less, but subject to all legal highways.

The bearings used herein are based on an assumed meridian and are used only to denote angles.

Permanent Parcel No.: 102-22-060

**PARCEL NO. 5:**

Situated in the City of Cleveland, County of Cuyahoga, State of Ohio and known as being part of Original Two Acre Lot No. 166 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 702.28 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 722.28 feet, U.S. Government Datum Level, bounded and described as follows:

Beginning at the Southeasterly corner of Parcel 2, Course No. 8, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in December, 1993;

Course No. 1: Thence continuing South 34° 05' 12" East along the Southeasterly prolongation of Course No. 8 in said Parcel 2, 57 feet;

Course No. 2: Thence South 55° 59' 09" West, 64.20 feet;

Course No. 3: Thence North 34° 00' 51" West, 57 feet to a point in the Southeasterly line of aforementioned Parcel 2, Course No. 9;

Course No. 4: Thence North 55° 59' 09" East along said Southeasterly line of Parcel 2 in Course No. 9, 64.13 feet to the place of beginning, containing 3,657 square feet (0.0840 acres), according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in April, 1998, be the same more or less, but subject to all legal highways.

The bearings used herein are based on an assumed meridian and are used only to denote angles.

Permanent Parcel No.: 102-22-061

**PARCEL NO. 6:**

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio, and known as being part of Original 2 Acre Lots Nos. 164, 165, 166 and 167 and bounded and described as follows:

Beginning on the Southerly line of Superior Avenue, N.E., 132 feet wide and the Easterly line of E. 12th Street, 140 feet wide, as shown by the plat recorded in Volume 203 of Maps, Page 30 & 31 of Cuyahoga County Records;

Thence North 55 deg. 42' 39" East, along the Southerly line of Superior Avenue, N.E., a distance of 350.52 feet to the Westerly line of E. 13th Street, 66 feet wide;

Thence South 33 deg. 10' 20" East, along the Westerly line of E. 13th Street, a distance of 431.85 feet to the Northerly line of Chester Avenue, N.E., 100 feet wide;

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Thence South 55 deg. 48' 37" West along the Northerly line of Chester Avenue, N.E. distance of 343.63 feet to the Easterly line of E. 12th Street;

Thence North 34 deg. 05' 12" West, along the Easterly line of E. 12th Street, a distance of 431.18 feet to the place of beginning.

EXCEPTING FROM PARCEL NO. 6 THE FOLLOWING FIVE (5) PARCELS:

EXCEPTION PARCEL NO. 1:

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot Nos. 164, 165, 166 and 167, part of Payne Avenue, N.E., 80 feet wide and part of Walnut Avenue, N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio, June 3, 1968 and further known as being part of the hereinafter described premises extending above a horizontal plane at elevation 699.75 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 777.90 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Southeasterly line of Superior Avenue N.E., 132 feet wide, at its intersection with the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Course No. 1: Thence North 55° 42' 39" East along said Southeasterly line of Superior Avenue N.E., 78.78 feet;

Course No. 2: Thence South 34° 25' 04" East, 35.40 feet;

Course No. 3: Thence South 55° 54' 48" West, 9.00 feet;

Course No. 4: Thence South 34° 33' 44" East, 119.40 feet;

Course No. 5: Thence North 55° 56' 33" East, 2.43 feet, said point being the most Westerly corner of Parcel No. 2, hereinafter described;

Course No. 6: Thence South 34° 29' 32" East, along a Southwesterly line of said Parcel 2 in Course No. 10 and the Southeasterly prolongation thereof, 78.00 feet;

Course No. 7: Thence South 55° 54' 48" West, 3.78 feet;

Course No. 8: Thence South 34° 06' 36" East, 198.55 feet to a point in the Northwesterly line of Chester Avenue N.E., 100 feet wide, as shown on the Dedication Plat in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Course No. 9: Thence South 55° 48' 37" West along said Northwesterly line of Chester Avenue N.E., 70.27 feet to its intersection with the aforementioned Northeasterly line of East 12th Street;

Course No. 10: Thence North 34° 05' 12" West along said Northeasterly line of East 12th Street, 431.18 feet to the place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated June, 1993, be the same more or less, but subject to all legal highways.

EXCEPTION PARCEL NO. 2:

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot Nos. 166 and 167, part of Payne Avenue N.E., 80 feet wide and part of Walnut Avenue N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio, June 3, 1968 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 701.75 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 716 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Southeasterly line of Superior Avenue N.E., 132 feet wide, at its intersection with the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat, recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records;

Thence North 55° 42' 39" East along said Southeasterly line of Superior Avenue N.E., 78.78 feet;

Thence South 34° 25' 04" East, 35.40 feet;

Thence South 55° 54' 48" West, 9 feet;

Thence South 34° 33' 44" East, 119.40 feet;

Thence North 55° 56' 33" East, 2.43 feet to the principal place of beginning, said point being a Northeasterly corner of Parcel 1, heretofore described;

Course No. 1: Thence North 55° 56' 33" East, 55.98 feet;

Course No. 2: Thence North 34° 01' 53" West, 113.56 feet;

Course No. 3: Thence North 55° 54' 18" East, 67.96 feet;

Course No. 4: Thence South 34° 05' 12" East, 3.23 feet;

Course No. 5: Thence North 55° 54' 48" East, 9.03 feet;

Course No. 6: Thence South 34° 03' 43" East, 132.34 feet;

Course No. 7: Thence South 55° 54' 48" West, 6.14 feet;

Course No. 8: Thence South 34° 05' 12" East, 32.06 feet;

Course No. 9: Thence South 55° 59' 09" West, 126.50 feet to a point in the Northeasterly line of aforementioned Parcel 1 in Course No. 6;
Course No. 10: Thence North 34° 29' 32" West along said Northeasterly line of Parcel 1, 53.92 feet to the principal place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated June, 1993, be the same more or less, but subject to all legal highways.

EXCEPTION PARCEL NO. 3:

Situated in the City of Cleveland, County of Cuyahoga, State of Ohio and known as being part of Two Acre Lot No. 166 and part of Walnut Avenue N.E., 66 feet wide, as vacated by Ordinance No. 1015-68, passed by the Council of City of Cleveland, Ohio June 3, 1968 and further known as being all that

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



part of the hereinafter described premises extending above a horizontal plane at elevation 647.50 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 662.00 feet, U.S. Government Datum Level, together forming a parcel of land bounded and described as follows:

Beginning on the Northeasterly line of East 12th Street, 140 feet wide, as shown by the Dedication Plat recorded in Volume 203 of Maps, Pages 30 and 31 of Cuyahoga County Records at the point distant South 34° 05' 12" East 184 feet as measured along said Northeasterly line of East 12th Street, from its intersection with the Southeasterly line of Superior Avenue N.E., 132 feet wide;

Course No. 1: Thence North 55° 54' 48" East, 2.67 feet;

Course No. 2: Thence South 34° 05' 12" East, 7.90 feet;

Course No. 3: Thence North 55° 54' 48" East, 6.11 feet;

Course No. 4: Thence North 34° 05' 12" West, 0.90 feet;

Course No. 5: Thence North 55° 54' 48" East, 15.66 feet;

Course No. 6: Thence South 34° 05' 12" East, 0.75 feet;

Course No. 7: Thence North 55° 54' 48" East, 2.76 feet;

Course No. 8: Thence South 34° 05' 12" East, 6.36 feet;

Course No. 9: Thence South 55° 54' 48" West, 2.76 feet;

Course No. 10: Thence South 34° 05' 12" East, 0.75 feet;

Course No. 11: Thence South 55° 54' 48" West, 8.83 feet;

Course No. 12: Thence South 34° 05' 12" East, 6.44 feet;

Course No. 13: Thence South 55° 54' 48" West, 12.94 feet;

Course No. 14: Thence South 34° 05' 12" East, 0.47 feet;

Course No. 15: Thence South 55° 54' 48" West, 2.67 feet to the aforementioned Northeasterly line of East 12th Street;

Course No. 16: Thence North 34° 05' 12" West along the Northwesterly line of East 12th Street, 21.77 feet to the place of beginning, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, dated December, 1993, be the same more or less, but subject to all legal highways.

The planes above referred to in the legal description vary in elevation at different locations with the above described premises and the elevation of said planes serving to determine the land being conveyed herein are based upon:

a) Elevations previously established of recorded as referred to herein;
b) Elevations established and monumented by survey as referred to herein, and
c) Elevations that are based upon existing construction plans and which can be monumented as may be

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



required by re-survey upon completion of construction by survey, affidavit by surveyor or other suitable means.

In every case the planes are to be revised to coincide with either the lower surface of the fire proofing on the building girders as erected or with the surfaces of public ways when explicitly referred to above.

Said revisions shall be liberally construed so as to eliminate all gaps and/or overlaps between the parcels of land adjacent to said planes.

**EXCEPTION PARCEL NO. 4:**

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio and known as being part of Original Two Acre Lot No. 166 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 647.50 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 662 feet, U.S. Government Datum Level, bounded and described as follows:

Beginning at the Southeasterly corner of Parcel 3, Course No. 12 according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in June, 1993;

Course No. 1: Thence continuing South 34° 05' 12" East along the Southeasterly prolongation of Course No. 12 in said Parcel 3, 3.38 feet;

Course No. 2: Thence South 55° 54' 18" West, 0.24 feet;

Course No. 3: Thence South 34° 05' 12" East, 0.43 feet;

Course No. 4: Thence North 55° 54' 48" East, 8.82 feet;

Course No. 5: Thence South 34° 05' 12" East, 4.07 feet;

Course No. 6: Thence South 55° 54' 48" West, 1.40 feet;

Course No. 7: Thence South 34° 05' 12" East, 0.91 feet;

Course No. 8: Thence South 55° 54' 48" West, 12.37 feet;

Course No. 9: Thence North 34° 05' 12" West, 4.98 feet;

Course No. 10: Thence North 55° 54' 48" East, 1.94 feet;

Course No. 11: Thence North 34° 05' 12" West, 0.43 feet;

Course No. 12: Thence South 55° 54' 48" West, 0.37 feet;

Course No. 13: Thence North 34° 05' 12" West, 3.38 feet to a point in Course No. 13 of the aforementioned Parcel 3;

Course No. 14: Thence North 55° 54' 48" East along Course No. 13 of said Parcel 3, 3.64 feet to the place of beginning, containing 81 square feet, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in April, 1998, be the same more or less, but subject to all legal highways.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



The bearings used herein are based on an assumed meridian and are used only to denote angles.

**EXCEPTION PARCEL NO. 5:**

Situated in the City of Cleveland, County of Cuyahoga, State of Ohio and known as being part of Original Two Acre Lot No. 166 and further known as being all that part of the hereinafter described premises extending above a horizontal plane at elevation 702.28 feet, U.S. Government Datum Level and having as its upper limits a horizontal plane at elevation 722.28 feet, U.S. Government Datum Level, bounded and described as follows:

Beginning at the Southeasterly corner of Parcel 2, Course No. 8, according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in December, 1993;

Course No. 1: Thence continuing South 34° 05' 12" East along the Southeasterly prolongation of Course No. 8 in said Parcel 2, 57 feet;

Course No. 2: Thence South 55° 59' 09" West, 64.20 feet;

Course No. 3: Thence North 34° 00' 51" West, 57 feet to a point in the Southeasterly line of aforementioned Parcel 2, Course No. 9;

Course No. 4: Thence North 55° 59' 09" East along said Southeasterly line of Parcel 2 in Course No. 9, 64.13 feet to the place of beginning, containing 3,657 square feet (0.0840 acres), according to a survey by Garrett and Associates, Inc., Registered Engineers and Surveyors, made in April, 1998, be the same more or less, but subject to all legal highways.

The bearings used herein are based on an assumed meridian and are used only to denote angles.

Permanent Parcel Nos.: 102-22-003 through 102-22-012 and 102-22-014 through 102-22-029

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



## SCHEDULE B, PART I - Requirements

All of the following Requirements must be met:

1.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.  Pay the agreed amount for the estate or interest to be insured.

3.  Pay the premiums, fees, and charges for the Policy to the Company.

4.  A survey satisfactory to the Company must be submitted to delete the standard survey exceptions and issue certain endorsements, including but not limited to the Same as Survey (ALTA 25) and the ALTA 9 series endorsements.

5.  If the Land is vacant and/or loan funds are to be used for construction, utility will serve letters and/or a site plan must be submitted for certain endorsements related to land under development.

6.  If a Zoning Endorsement is requested, the following is required: A letter from the local Planning and Zoning authority, which contains a statement as to violations, and/or a current zoning report from a nationally recognized due diligence firm.

7.  Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

TO BE DETERMINED AT SHERIFF'S SALE

**Notice: Due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company may not be able to close or insure transactions involving Land that is associated with these activities.**

**Note: The Company reserves the right to make additional requirements.**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**SCHEDULE B, PART II - Exceptions**

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I - Requirements are met.

2. Rights or claims of parties other than Insured in actual possession of any or all the property.

3. Any lien, mechanic's lien, or materialman's lien or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law, and not shown by the Public Records.

4. Public or private easements, or claims of easements, not shown by the public record.

5. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

6. Anything to the contrary notwithstanding, this policy does not insure the quantity of acreage, square footage, or accuracy of dimensions recited within the description of premises described in Schedule A.

7. Minerals of whatsoever kind, subsurface and surface substances, including but not limited to coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether appearing in the Public Records or listed in Schedule B. The Company makes no representation as to the present ownership of any such interests. There may be leases, grants, exceptions or reservations of interests that are not listed.

8. Taxes or assessments which are not recorded as existing liens in the Public Records.

9. Subject to any oil and/or gas lease, pipeline agreement, or other instrument related to the production or sale of oil or natural gas which may arise after the Date of the Policy.

10. Ohio law, effective October 3, 2023, prohibits ownership of real property by certain foreign parties. This law can be found at O.R.C. §5301.256. Any loss or damage incurred because of a violation of this law is excluded from coverage under the terms of a title insurance policy.

**SCHEDULE B, PART II - Exceptions**

**Special Exceptions:**

11. **Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing from Reserve Apartments, Ltd., an Ohio limited liability company, and Reserve Square Apartments, Ltd., an Ohio limited liability company, to M&T Realty Capital Corporation, a Maryland corporation, dated December 23, 2014 and recorded December 23, 2014 as AFN 201412230406 of Cuyahoga County Records, to secure the sum of $93,433,000.00 and all obligations secured thereby.**

     **Note: Assignment of Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing by M&T Realty Capital Corporation, a Maryland corporation, to Fannie Mae recorded December 23, 2014 as AFN 201412230407 of Cuyahoga County Records.**

12. **UCC Financing Statement between Reserve Apartments, Ltd, and Reserve Square Apartments, Ltd., "Debtors", and Fannie Mae, Secured Party, recorded December 23, 2014 as AFN 201412239003 of Cuyahoga County Records.**

     **Note: Continuation recorded July 22, 2019 as AFN 201907229002 of Cuyahoga County Records.**

     **Note: Continuation recorded July 10, 2024 as AFN 202407100502 of Cuyahoga County Records.**

13. **The Urban Renewal Plan, Project I - Erieview Urban Renewal Project Number Ohio R-36 recorded November 14, 1961 in Volume 97, Page 641 of Cuyahoga County Records.**

14. **Report by Director of Urban Renewal and Housing, Setting Forth Modifications and Improvements of the Redevelopment Plan for Erieview I Urban Renewal Project, No. Ohio R-36, as Particularly Related to Development Site No. II recorded December 11, 1962 in Volume 102, Page 1 of Cuyahoga County Records.**

15. **Subject to the rights of the public, utility companies, and others in and to that portion of the premises described in Schedule A that lies within the bounds of Payne Avenue N.E., Walnut Avenue N.E., and East 13th Street, as vacated by Vacation Plat recorded January 22, 1969 in Volume 204 of Maps, Page 11 of Cuyahoga County Records.**

16. **Covenants and conditions in Official Deed from the City of Cleveland to Carl D. Glickman, Trustee, recorded October 22, 1971 in Volume 12943, Page 747 of Cuyahoga County Records.**

17. **Permanent Easement for a Chester Avenue Pedestrian Way from Carl D. Glickman, Trustee, for the benefit of Park Central Associates, a limited partnership, in City of Cleveland Ordinance No. 356-73 passed March 12, 1973 and made effective March 20, 1973.**

18. **Encroachment Permit in City of Cleveland Ordinance No. 2257-90 (copy not found in the Cleveland City Record).**

19. **Reciprocal Operation and Easement Agreement by and between EQR-Reserve Square Limited Partnership and Cleveland Finance Associates Limited Partnership recorded August 30, 1994 in Volume 94-08322, Page 4 of Cuyahoga County Records.**

     **Note: Amended and Restated Reciprocal Operation and Easement Agreement by and betwen EQR-Reserve Square Limited Partnership and Felcor/CSS Holdings, L.P., recorded November 20, 1995 in**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Volume 95-09982, Page 40 of Cuyahoga County Records.

Note: First Amendment of Amended and Restated Reciprocal Operation and Easement Agreement by and betwen EQR-Reserve Square Limited Partnership and Felcor/CSS Holdings, L.P., recorded December 1, 2000 as AFN 200012010186 of Cuyahoga County Records.

Note: Second Amendment of Amended and Restated Reciprocal Operation and Easement Agreement by and between Reserve Apartments, Ltd., and Reserve Square Apartments, Ltd., recorded October 5, 2012 as AFN 201210050467 of Cuyahoga County Records.

20. Agreement for Non-Exclusive Easement from Equity Residential Properties Management Limited Partnership, as Agent for the Owner of Reserve Square Apartments to Interactive Cable Systems, Inc., recorded July 23, 1996 in Volume 96-07034, Page 42 of Cuyahoga County Records.

21. Agreement for Non-Exclusive License and Easement from Equity Residential Properties Management Limited Partnership, as Agent for the Owner of Reserve Square Apartments to Interactive Cable Systems, Inc., recorded July 23, 1996 in Volume 96-07034, Page 47 of Cuyahoga County Records.

22. Memorandum of Agreement for Exclusive Easement and License by and between Equity Residential Properties Management Limited Partnership, "Grantor", and ResNet Communications, LLC, "Grantee", recorded October 15, 1997 in Volume 97-10506, Page 20 of Cuyahoga County Records.

23. Unrecorded Laundry Room Lease by and between Reserve Apartments, Ltd., "Lessor", and Coinmach Corporation, "Lessee", dated April 25, 2008.

24. Unrecorded Lease by and between Reserve Apartments, Ltd., "Landlord", and Reserve Square Apartments, Ltd., "Tenant", dated January 1, 2013.

25. Lease agreement by and between Reserve Apartments, Ltd., "Landlord", and Dolgen Midwest, LLC, "Tenant", as evidenced by Memorandum of Lease recorded June 18, 2019 as AFN 201906180365 of Cuyahoga County Records.

26. The Cuyahoga County Treasurer's Tax Duplicate shows:

Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-057, on part caption, in the amount of $198,438.12 are a lien now due and payable, if paid, not yet posted.

Included in the above taxes are the following special assessments:
NONE

Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-058, on part caption, in the amount of $11,112.89 are a lien now due and payable, if paid, not yet posted.

Included in the above taxes are the following special assessments:
NONE

Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-059, on part caption, in the amount of $630.78 are a lien now due and payable, if paid, not yet posted.

Included in the above taxes are the following special assessments:
NONE

Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-060, on part caption, in the amount of $18.07 are a lien now due and payable, if paid, not yet posted.

Included in the above taxes are the following special assessments:
NONE

Note: The half year tax figure is based on land value only.

Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-061, on part caption, in the amount of $5,721.87 are a lien now due and payable, if paid, not yet posted.

**Included in the above taxes are the following special assessments:**
**NONE**

**Taxes for the Last Half of 2024, Permanent Parcel Number 102-22-003 (listed together with 102-22-004 through 102-22-012 and 102-22-014 through 102-22-029), on part caption, in the amount of $984,721.25 are a lien now due and payable, if paid, not yet posted.**

**Included in the above taxes are the following special assessments:**
**M919352 Downtown Cleve Impvt District - $43,319.42**

**Taxes for the First Half of 2025 and thereafter are a lien not yet due and payable.**

**Additions or abatements which may hereafter be made legally constituted authorities on account of errors, omissions or changes in valuation.**

**Said premises are subject to special assessments, if any, payable with the above taxes and thereafter and to any tax additions hereafter entered on the regular tax duplicate.**

**NOTICE: Copies of the vesting deed and all Schedule B items may be accessed using the link provided below. The access code is 250885ST.**

**Vesting Deeds & Schedule B Documents**

This Stewart Information Services Corporation Privacy Notice ("Notice") explains how we and our affiliates and majority-owned subsidiary companies (collectively, "Stewart," "our," or "we") collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of your information. Pursuant to Title V of the Gramm-Leach Bliley Act ("GLBA") and other Federal and state laws and regulations applicable to financial institutions, consumers have the right to limit some, but not all sharing of their personal information. Please read this Notice carefully to understand how Stewart uses your personal information.

The types of personal information Stewart collects, and shares depends on the product or service you have requested.

**Stewart may collect the following categories of personal and financial information from you throughout your transaction:**

1. Identifiers: Real name, alias, online IP address if accessing company websites, email address, account name, unique online identifier, or other similar identifiers.

2. Demographic Information: Marital status, gender, date of birth.

3. Personal Information and Personal Financial Information: Full name, signature, social security number, address, driver's license number, passport number, telephone number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, credit reports, or any other information necessary to complete the transaction.

**Stewart may collect personal information about you from:**

1. Publicly available information from government records.

2. Information we receive directly from you or your agent(s), such as your lender or real estate broker.

3. Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Stewart may use your personal information for the following purposes:**

1. To provide products and services to you in connection with a transaction.
2. To improve our products and services.
3. To communicate with you about our affiliates', and others' products and services, jointly or independently.

**Stewart may use or disclose the personal information we collect for one or more of the following purposes:**

a. To fulfill or meet the reason for which the information is provided.

b. To provide, support, personalize, and develop our website, products, and services.

c. To create, maintain, customize, and secure your account with Stewart.

d. To process your requests, purchases, transactions, and payments and prevent transactional fraud.
e. To prevent and/or process claims.
f. To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.
g. As necessary or appropriate to protect the rights, property or safety of Stewart, our customers, or others.
h. To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
i. To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.
j. To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
k. Auditing for compliance with federal and state laws, rules, and regulations.
l. Performing services including maintaining or servicing accounts, providing customer service, processing, or fulfilling orders and transactions, verifying customer information, processing payments.
m. To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

**Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties**

Stewart does not sell your personal information to nonaffiliated third parties. Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, your realtor, broker, or a lender). Stewart may disclose your personal information to non-affiliated third-party service providers and vendors to render services to complete your transaction.

We share your personal information with the following categories of third parties:

a. Non-affiliated service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)

b. To enable Stewart to prevent criminal activity, fraud, material misrepresentation, or nondisclosure.

c. Stewart's affiliated and subsidiary companies.

d. Parties involved in litigation and attorneys, as required by law.

e. Financial rating organizations, rating bureaus and trade associations, taxing authorities, if required in the transaction.

f. Federal and State Regulators, law enforcement and other government entities to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

The law does not require your prior authorization or consent and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or browsing information with non-affiliated third parties, except as required or permitted by law.

**Right to Limit Use of Your Personal Information**
You have the right to opt-out of sharing of your personal information among our affiliates to directly market to you. To opt-out of sharing your information with affiliates for direct marketing, you may send an "opt out" request to OptOut@stewart.com, or contact us through other available methods provided under "Contact Information" in this Notice. We do not share your Personal Information with nonaffiliates for their use to directly market to you without your consent.

**How Stewart Protects Your Personal Information**

Stewart maintains physical, technical, and administrative safeguards and policies to protect your personal information.

**Contact Information**
If you have specific questions or comments about this Notice, the ways in which Stewart collects and uses your information described herein, or your choices and rights regarding such use, please do not hesitate to contact us at:

**Phone:**          Toll Free at 1-866-571-9270
**Email:**          Privacyrequest@stewart.com

**Postal Address:**     Stewart Information Services Corporation
                        Attn:  Mary Thomas, Chief Compliance and Regulatory Officer
                        1360 Post Oak Blvd., Ste. 100, MC #14-1
                        Houston, TX  77056

**STEWART INFORMATION SERVICES CORPORATION**
**PRIVACY NOTICE FOR CALIFORNIA RESIDENTS**

Stewart Information Services Corporation and its affiliates and majority-owned subsidiary companies (collectively, "Stewart," "our," or "we") respect and are committed to protecting your privacy. Pursuant to the California Consumer Privacy Act of 2018 ("CCPA") and the California Privacy Rights Act of 2020 ("CPRA"), we are providing this **Privacy Notice ("**CCPA Notice"). This CCPA Notice explains how we collect, use, and disclose personal information, when and to whom we disclose such information, and the rights you, as a California resident have regarding your Personal Information. This CCPA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users, consumers, and others who reside in the State of California or are considered California Residents as defined in the CCPA ("consumers" or "you"). All terms defined in the CCPA & CPRA have the same meaning when used in this Notice.

**Personal and Sensitive Personal Information Stewart Collects**

Stewart has collected the following categories of personal and sensitive personal information from consumers within the last twelve (12) months:

**A. Identifiers.** A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers.

**B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)).** A name, signature, Social Security number, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information.

**C. Protected classification characteristics under California or federal law.** Age, race, color, ancestry, national origin, citizenship, marital status, sex (including gender, gender identity, gender expression), veteran or military status.

**D. Commercial information.** Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

**E. Internet or other similar network activity.** Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement.

**F. Geolocation data**

Stewart obtains the categories of personal and sensitive information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees, or their agents (For example, realtors, lenders, attorneys, brokers, etc.)

- Directly and indirectly from activity on Stewart's website or other applications.

- From third parties that interact with Stewart in connection with the services we provide.

**Use of Personal and Sensitive Personal Information**

Stewart may use or disclose the personal or sensitive information we collect for one or more of the following purposes:

a. To fulfill or meet the reason for which the information is provided.

b. To provide, support, personalize, and develop our website, products, and services.

c. To create, maintain, customize, and secure your account with Stewart.

d. To process your requests, purchases, transactions, and payments and prevent transactional fraud.

e.  To prevent and/or process claims.

f.  To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf pursuant to valid service provider agreements.

g.  As necessary or appropriate to protect the rights, property or safety of Stewart, our customers, or others.

h.  To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.

i.  To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).

j.  To help maintain the safety, security, and integrity of our website, products and services, databases and other technology-based assets, and business.

k.  To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.

l.  Auditing for compliance with federal and state laws, rules, and regulations.

m.  Performing services including maintaining or servicing accounts, providing customer service, processing, or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.

n.  To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal or sensitive information or use the personal or sensitive information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

**Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties**

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent throughout the course of your transaction (for example, a realtor, broker, or a lender).

We share your personal information with the following categories of third parties:

a.  Service providers and vendors we contract with to render specific services (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)

b.  Affiliated Companies.

c.  Parties involved in litigation and attorneys, as required by law.

d.  Financial rating organizations, rating bureaus and trade associations.

e.  Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information:

Category A:  Identifiers
Category B:  California Customer Records personal information categories
Category C:  Protected classification characteristics under California or federal law
Category D:  Commercial Information
Category E:  Internet or other similar network activity
Category F:  Non-public education information

A.  **Your Consumer Rights and Choices Under CPPA and CPRA**

The CCPA and CPRA provide consumers (California residents as defined in the CCPA) with specific rights regarding their personal information.  This section describes your rights and explains how to exercise those rights.

i.  **Access to Specific Information and Data Portability Rights**

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months.  Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

- The categories of personal information Stewart collected about you.

- The categories of sources for the personal information Stewart collected about you.

- Stewart's business or commercial purpose for collecting that personal information.

- The categories of third parties with whom Stewart shares that personal information.

- The specific pieces of personal information Stewart collected about you (also called a data portability request).

- If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

## ii.  Deletion Request Rights

You have the right to request that Stewart delete any personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

## iii.  Opt-Out of Information Sharing and Selling

Stewart does not share or sell information to third parties, as the terms are defined under the CCPA and CPRA.  Stewart only shares your personal information as commercially necessary and in accordance with this CCPA Notice.

## iv.  Correction of Inaccurate Information

You have the right to request that Stewart correct any inaccurate information maintained about.

## v.  Limit the Use of Sensitive Personal Information

You have the right to limit how your sensitive personal information, as defined in the CCPA and CPRA is disclosed or shared with third parties.

## Exercising Your Rights Under CCPA and CPRA

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described herein, your choices and rights regarding such use, or wish to exercise your rights under California law, please submit a verifiable consumer request to us by the available means provided below:

1. Emailing us at OptOut@stewart.com; or


2. Visiting http://stewart.com/ccpa.


Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information. You may also make a verifiable consumer request on behalf of your minor child, if applicable.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

## Response Timing and Format

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt. If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt. The response we provide will also explain the reasons we cannot comply with a request, if applicable.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded. If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

### Non-Discrimination

Stewart will not discriminate against you for exercising any of your CCPA rights. Unless permitted by the CCPA, we will not:

- Deny you goods or services.

- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.

- Provide you a different level or quality of goods or services.

- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

### Record Retention

Your personal information will not be kept for longer than is necessary for the business purpose for which it is collected and processed. We will retain your personal information and records based on established record retention policies pursuant to California law and in compliance with all federal and state retention obligations. Additionally, we will retain your personal information to comply with applicable laws, regulations, and legal processes (such as responding to subpoenas or court orders), and to respond to legal claims, resolve disputes, and comply with legal or regulatory recordkeeping requirements.

### Changes to This CCPA Notice

Stewart reserves the right to amend this CCPA Notice at our discretion and at any time. When we make changes to this CCPA Notice, we will post the updated Notice on Stewart's website and update the Notice's effective date.

### Link to Privacy Notice

Stewarts Privacy Notice can be found on our website at https://www.stewart.com/en/privacy.html.

### Contact Information

Stewart Information Services Corporation
Attn: Mary Thomas, Chief Compliance and Regulatory Officer
1360 Post Oak Blvd., Ste. 100, MC #14-1
Houston, TX 77056