**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **FANNIE MAE**,<br><br>　　　　　　Plaintiff,<br>v.<br><br>**RESERVE APARTMENTS, LTD., et al.**<br><br>　　　　　　Defendants. | CASE NO.:  1:25-cv-01510<br><br>JUDGE BRIDGET MEEHAN BRENNAN |

### AGREED ORDER GRANTING PLAINTIFF'S UNOPPOSED AND CONSENTED *EX PARTE* MOTION TO APPOINT RECEIVER

This matter is before the Court upon the Unopposed and Consented *Ex Parte* Motion to Appoint Receiver ("Motion") filed by Plaintiff Fannie Mae and Defendants Reserve Apartments, Ltd. and Reserve Square Apartments, Ltd. ("Defendant Borrowers"). By its application, Fannie Mae seeks the appointment of a receiver pursuant to that certain Mortgage described herein, with such receiver to be appointed over the real and personal property more particularly described in the Mortgage and commonly known as 1701 East 12th Street, Cleveland, Ohio 44114, which includes Permanent Parcels 102-22-057, 102-22-058, 102-22-059, 102-22-060, 102-22-061, 102-22-003, 102-22-004, 102-22-005, 102-22-006, 102-22-007 (the "Property"). Capitalized terms not

27321734.5

otherwise defined herein shall have the meaning ascribed to them in the Complaint, Motion, or the Loan Documents (defined herein).

The Court, having considered the Motion, the arguments of counsel, and the agreement of the Defendant Borrowers, finds that the relief requested therein should be GRANTED.

**IT IS on this day, ORDERED as follows:**

1. On December 23, 2014, Defendant Borrowers executed and delivered to M&T Realty Capital Corporation ("Original Lender") a Multifamily Note in the principal amount of Ninety-Three Million Four Hundred Thirty-Three Thousand and 00/100 Dollars ($93,433,000.00) (the "Note").

2. The Note is secured by, among other things, an Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing securing the amounts due or which may become due under the Note (the "Mortgage"). The Mortgage was recorded on December 23, 2014 as Instrument Number 201412230406 in the Cuyahoga County, Ohio records.

3. The Loan is further evidenced by a Multifamily Loan and Security Agreement (Non-Recourse) (the "Loan Agreement"), dated as of December 23, 2014 between Defendant Borrowers and Original Lender.

4. The Note, the Mortgage, the Loan Agreement, and all other documents and instruments securing or evidencing the Loan are hereinafter, collectively, referred to as the "Loan Documents."

5. Fannie Mae is the assignee of the Loan Documents by way of, without limitation, an endorsement to the Note and by Assignment of Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Assignment of Mortgage") which was recorded on December 23, 2014 as Instrument Number 201412230407 in the Cuyahoga

27321734.5

County, Ohio records. Thus, Fannie Mae is the owner and holder under the Loan Documents and the party entitled to enforce same.

6. The parties agreed in Section 3(e) of the Mortgage that if an Event of Default has occurred and is continuing, Fannie Mae may apply to any court having jurisdiction for the appointment of a receiver for the Property.

7. Fannie Mae's claims against the Defendant Borrowers are secured by valid, binding, first-priority liens on and security interests in all of Defendant Borrowers' property, real or personal, including the Property.

8. Fannie Mae is the current owner and holder of the Note and Mortgage. Fannie Mae is government-sponsored enterprise and a federally chartered entity that Congress created to enhance the nation's housing-finance market. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq*. Among other powers, Congress granted the Director of FHFA the authority to place Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See, e.g.*, 12 U.S.C. § 4617(f).

9. FHFA, as the Conservator is statutorily empowered to "preserve and conserve Fannie Mae's assets and property," to "operate" Fannie Mae, to "perform all of [Fannie Mae's]

27321734.5

functions in [Fannie Mae's] name," and to "collect all obligations and money due" [Fannie Mae]. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv).

10. Andrew Hayman, of the Hayman Company, who is a resident of the State of Michigan and a citizen of the United States, is not a party, attorney, or other person interested in this action, and is qualified to serve as a receiver in this matter and the Plaintiff and Defendant Borrowers hereby approve Andrew Hayman as the Receiver.

**IT IS FURTHER ORDERED that:**

11. Andrew Hayman of the Hayman Company, whose work address is 29100 Northwestern Highway, Suite 410, Southfield, Michigan 48034, be and is hereby appointed receiver of the Property (the "<u>Receiver</u>").

12. The Receiver is directed to, <u>within 5 business days</u> of entry of this Order, post with the Clerk of this Court a receiver's bond or a cash deposit in the amount of $10,000.00 file the receiver's oath prescribed by law, and promptly notify Defendant Borrowers (or if represented by counsel, Defendant Borrowers' counsel of record) when these actions are completed (the "<u>Effective Date</u>")  The cost of the Receiver's bond and any renewals or extensions shall be an expense of the Receivership estate paid from Property funds.

13. Defendant Borrowers, their agents, heirs, assigns, employees, managers (including the current property manager, K&D Management LLC and its representatives), contractors, vendors, suppliers of services and goods (including utility providers), and any and all other persons with actual or constructive knowledge of this Order (including their agents and employees) (collectively, the "<u>Obligor Parties</u>"), <u>within five (5) Business Days</u> of the Receiver notifying the Defendant Borrowers of the Effective Date:

    a. Vacate the Property and surrender possession of the Property to the Receiver, including providing the Receiver full and complete access to the Property, including but not limited to, keys, alarm codes, access codes, passwords, and combinations

27321734.5

to any locks or security devices at or relating to the Property, including any entry, monitoring, and/or surveillance systems,

  b. Initiate the Y2Y transfer (Yardi to Yardi) for software data transfer, pay and turn over all cash of the Defendant Borrowers to accounts designated by the Receiver, and provide the Receiver full and complete access to all financial accounts of the Defendant Borrowers, including but not limited to petty cash, checking, deposits, disbursements, payroll, security deposits, all account names, numbers, and view access to all such accounts and cash of the Defendant Borrowers, as well as the tax ID number for the Defendant Borrowers;

  c. Promptly pay and turn over to the Receiver, and perform all acts necessary to transfer to Receiver, all funds on hand (whether in cash, check or otherwise) held by (or for the benefit of) the Obligor Parties, arising from the ownership, possession, management, or operation of the Property.

  14. Obligor Parties, <u>within five (5) business days</u> following entry of this Order, shall provide the Receiver with copies of all existing insurance policies for the Property, the assets of the Receivership estate, or maintained by the Obligor Parties for or with respect to the Property. The Receiver, the retained professional property manager, FHFA, and the Plaintiff shall each be named as an additional insured or as mortgagee, as their interest may appear on all existing coverages, including property damage, and general liability policies for the Property (collectively referred to as "<u>Insurance on Property</u>"). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be expenses of the Receivership estate. The Receiver shall have the right to possess and control all right, title, and interest of Defendant Borrowers or the insured in and to all proceeds from any claims made or to be made under any insurance policy maintained by Defendant Borrowers, the Receiver, or any other party with respect to the Property of the Receivership estate. Except as restricted by this paragraph below, the Receiver shall have the right to modify, amend, or replace any Insurance on the Property or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property. No existing insurer may cancel its existing policy as a result of the appointment of the Receiver without consent from the Plaintiff and/or FHFA. The Defendant Borrowers may not amend, modify, or cancel any existing

27321734.5

insurance policy without the written consent of the Receiver, Plaintiff and/or FHFA. Furthermore, the Receiver is required to obtain written consent from the Plaintiff prior to any such amendment, modification or cancellation of any existing insurance policy.

15     To the extent not already provided to the Receiver at delivery of possession of the Property as provided in Paragraph 13, the Obligor Parties shall use commercially reasonable efforts to promptly deliver to the Receiver all of the following that are reasonably in the Obligor Parties' possession or control (the Obligor Parties are not obligated to create documents or records that do not already exist):

    a.  rents and other income of the Property;

    b.  security deposits and an accounting for all security deposits;

    c.  tax escrow deposits;

    d.  petty cash funds, if any;

    e.  to the extent owned, computer equipment, software (or, to the extent assignable pursuant to the user license, assigned), management files, equipment, furniture, supplies, and all passwords needed to access all software (to the extent assignable) and computer files maintained at the property management office(s) (and all off-site financial records) including the office located at the Property, if any;

    f.  books, records, checkbooks, ledgers, accounts payable and accounts receivable records;

    g.  documents, books, records and computer files, all passwords needed to access the Property and all security systems for the Property, or held or controlled by the Defendant Borrowers or any property manager(s) employed by Defendant Borrowers and all other records concerning the income, operation and management, or the Property

    h.  lists of utilities providers and utilities accounts;

    i.  all leases, including all communication/correspondence files pertaining to such leases;

    j.  documents pertaining to all pending new leases or renewals;

    k.  rent rolls;

    l.  tenant contact names and telephone numbers;

27321734.5

m. occupant ledgers;

n. a current aged account receivable/delinquency report;

o. a listing of all aged payables and other payables and documents sufficient to identify key vendors who currently provide goods and services to or for the Property;

p. documents identifying and summarizing all pending or threatened legal actions (excluding this action);

q. insurance policies and certificates, including the terms of all insurance policies;

r. tenant and vendor insurance certificates;

s. contracts with HUD and any other governmental rental or housing assistance payment program, and an accounting of all payments received pursuant to such contracts;

t. existing executory contracts and service contracts;

u. pending bids for contractor work;

v. on-site employee payroll records and employee files and applications;

w. inventories of all equipment, furniture, vehicles, and supplies;

x. 2024 year-end operating statements;

y. 2025 monthly operating statements, year-to-date;

z. an accounting of net operating income since delinquency;

aa. documents sufficient to identify all other sources of funds available to the Defendant Borrowers (e.g., payments from members or affiliates of Defendant Borrowers);

bb. copies of documents pertaining to any subordinate debt or other liens, including mezzanine debt, and identify amounts, lienholders, relationship of lienholders to the borrowing entity and/or partners/members, and status of each loan;

cc. current financial statements (less than 90 days old) of Defendant Borrowers and its members;

dd. site plans, specifications, floor plans, drawings, measurements, etc.;

ee. list of historical common area maintenance charges and operating expenses for the Property;

ff. documents identifying all insurance claims submitted in the past three (3) years concerning the Property;

gg. operating budgets for the Property;

hh. deferred maintenance budgets for the Property;

ii. copies of any correspondence from municipalities relating to any existing building code or city ordinance violations;

jj. all other documents whatsoever related to the Property;

kk. such other records pertaining to the management of the Property as may be reasonably requested by the Receiver;

ll. any and all other documents or information outlined in the Hayman Company Takeover Checklist and Due Diligence Templates attached to this order as Exhibits "A" and "B" and that are not otherwise specifically outlined in this paragraph 15 of this Order; and

mm. for any information and documentation identified in this Paragraph 15, the Obligor Parties' obligation to produced such information and documentation is limited to the prior twelve (12) calendar months.

16. The Obligor Parties be and are hereby restrained and enjoined from collecting or receiving all or any part of the rents, issues, and profits of the Property.

17. Should the Obligor Parties receive any rents or revenues from the Property on or after the Receiver taking possession of the Property, the Obligor Parties are restrained and enjoined from disposing of such rents, issues, profits, and revenues of the Property in any manner, other than by turning over such rents, issues, profits, and revenues to the Receiver or to Fannie Mae until further order of this Court.

18. The tenants in possession of the Property and such other persons as may be in possession of any part of the Property and all other persons liable for the rents be and are hereby enjoined and restrained from paying any rent for the Property to the Obligor Parties, and are hereby directed to pay the Receiver, and until the further order of the Court, to pay over to the Receiver or its duly designated agent all rents of the Property now due and unpaid or hereafter to become due.

27321734.5

19. All persons, entities and/or governmental agencies making rental or other payments for, or on behalf of, any tenant-in-possession of any portion of the Property, including but not limited to the Department of Housing and Urban Development ("HUD"), are hereby directed to pay and attorn to the Receiver, until further order of this Court, all rents, issues and profits now due and unpaid or hereinafter to become due and unpaid, and said persons, entities and/or governmental agencies are enjoined and restrained from paying such rents, issues and profits to the Obligor Parties or any one of them.

20. Unless authorized by the Receiver, the Obligor Parties are permanently enjoined from:

   a. Entering upon the Property at any time during the period this Order is in effect without the prior consent of the Receiver;

   b. Withdrawing, transferring, conveying, concealing, or otherwise disposing of funds or revenues derived from the operation of the Property, and from paying any such funds or revenues derived from the operation of the Property, and from paying any such funds to (or for the benefit of) themselves or any other party;

   c. Terminating, canceling, altering, amending, or otherwise changing any insurance policies obtained by the Receiver related to any portion of the Property;

   d. Removing from, destroying, concealing, changing, or altering any property or equipment from the Property, including without limitation any of the books and records relating to the ownership, possession management, or operation of the Property.

   e. Canceling, transferring, selling, assigning, revoking, returning, or terminating any service contracts, marketing agreements, housing agreements, management agreements, software agreements, and/or licenses obtained by the Receiver related to the operations and management of the Property;

   f. Interfering with (whether directly or indirectly), obstructing, or preventing in any way the Receiver's actions pursuant to this Order, including the management or operation of the Property; and

   g. Causing or permitting any liens, deeds of trust, security interests, or other encumbrances to be filed or asserted against the Property.

   h. Taking any action that would require the Defendant Borrowers to become delinquent in its franchise tax filings or cause Defendant Borrowers to not be in good standing with the State of Ohio.

27321734.5

21. All public utilities shall continue to provide utility services to the Receiver without a prior cash deposit, and with the cost of any such utility services required following the Receiver taking possession of the Property to be a cost of administration herein and entitled to an appropriate priority of payment, and until further order of this Court, all public utilities are hereby restrained and enjoined from terminating any utility services to the Property. The utility providers shall give the Receiver access to all accounts servicing the Property including on-line access to accounts and records of historical consumption and billing to the extent relating solely to the Property, but not with respect to any non-receivership properties.  The utility providers will also change the billing address for all accounts servicing the Property to the Receiver's business address at 29100 Northwestern Highway, Suite 410, Southfield, Michigan 48034.

22. To the fullest extent of this Order and applicable law, the Receiver is empowered and directed in its capacity as fiduciary and officer of the Court to:

   a. Enter upon and take possession of the Property and to manage, take charge, preserve, and safeguard the Property, and all personal property, assets, leases, security deposits, accounts, all rents due and hereinafter due, notes, receivables, bank accounts, actions and choses in action, and all other property of any kind and every kind, character and description wherever the same may be located or found and used in connection with the operation of the Property and reduce the same to possession.

   b. Demand, collect, and receive all rents, issues, profits, and revenues now due and unpaid or to become due related to the Property, including but not limited to all payments made by or on behalf of: (i) any tenants or occupants in possession of the Property or any portion of it; (ii) any governmental agency making payments for, or on behalf of, said tenants or occupants, including but not limited to, any and all payments made by, or on behalf of HUD and/or made pursuant to any other governmental rental or housing assistance payment program; and (iii) any person or entity liable for such rents.

   c. Pay the normal, ordinary, and necessary operating expenses of the Property from the rents and other revenues collected from the Property from the date of appointment as funds are available.

   d. Engage The Hayman Company ("New Property Manager") as property manager.

27321734.5

 e. Keep records and retain invoices and receipts for all work performed hereunder and for all things necessary for the due care and proper management of the Property.

 f. Deliver a job detail report and/or itemization of all contracted work, if any, to Fannie Mae for approval for any improvements or remedial work which shall exceed $25,000 in the aggregate.

 g. Take such steps as are necessary to appeal, challenge or otherwise seek to reduce the real estate taxes and assessments levied upon the Property, but shall have no obligation to do so.

 h. Open and deposit in a separate bank account at a FDIC insured institution (the "<u>Depository</u>") all monies received by it at the time it receives same in its own name as Receiver and after paying the real estate taxes, municipal assessments, operational expenses and any other charges concerning the Property and otherwise permitted pursuant to this Order, or subsequent court order relating thereto, and after doing all things necessary for the due care and proper management of the Property, the Receiver shall deliver the surplus monies, if any, to Plaintiff on a monthly basis, the holder of the mortgage encumbering the Property, and that it then, after deducting therefrom its proper fees and disbursements in amounts approved by this Court.

 i. Not later than the twentieth (20th) day of each month or the next business day thereafter (commencing in ____ 2025), prepare and deliver to the parties who have appeared herein a monthly report and file same with the Court and serve a copy upon all parties appearing in this action.  The monthly report shall include:

  a) a copy of any contract entered into by the Receiver regarding repair or improvement of the building;

  b) a report of the lease and occupancy status of each unit in the Property, and any actions taken with respect to any tenant or lease;

  c) an account of the disposition of all revenues received from the Property; and an account of all expenses and improvements.

 j. Institute and carry on all legal proceedings necessary for the protection of the Property, or to recover possession of the whole or any part thereof, and to institute, prosecute and continue actions for the collection of rents due or hereinafter to become due, and institute and prosecute actions for any diversion of the rents, issues and/or profits of the Property, for lease violations, and institute and prosecute actions for any past diversion of the rents, issue and/or profits of the Property, for lease violations, and institute summary proceedings for the removal of any tenant or tenants, and that the Receiver shall be permitted to retain counsel of its choice to effectuate its duties hereunder without further application to this Court;

27321734.5

k.       Hire personnel necessary to maintain and preserve the Property including, without limitation, the New Property Manager, accountants, and other persons and professionals as the Receiver deems appropriate to perform her duties;

l.       Retain, hire, and terminate management and other personnel of the Property;

m.       Pay from the Property revenues the ordinary and necessary expenses of owning, operating, and maintaining the Property (the "Property Expenses") incurred from and after the date of Receiver's appointment, including, without limitation, a reasonable management fee and compensation and overhead to its professionals;

n.       Pay expenses but is not obligated to pay expenses incurred prior to the appointment of the Receiver that were incurred for the benefit of the Property. The responsibility for payment of expense incurred prior to the appointment of the Receiver shall remain the responsibility of the Obligor Parties;

o.       Maintain and control the Property as necessary to prevent diminution of the Property's value, to make repairs and take remedial action to preserve and protect the Property, as well as hire such contractors, suppliers, material men and other professionals as in the Receiver's prudent business judgment the Receiver deems necessary to complete any required repair or remediation of the Property; including, without limitation, the payment of taxes, insurance, utility charges, and other Property Expenses incurred from and after the date of Receiver's appointment to the extent that such funds are available;

p.       Contract for and obtain such services (including utilities), supplies, equipment, and goods as are reasonably necessary to operate, preserve, and protect the Property and the licenses and permits reasonable and necessary for the continued operation of the Property;

q.       Take necessary steps to winterize, waterproof and otherwise safeguard, secure, protect and preserve the Property and any and all equipment located thereon;

r.       Comply with all code enforcement orders provided to the Receiver regarding the Property or its operations;

s.       Employ an agent to conduct said work and pay the reasonable value of such agent's services out of the rents and profits received and, if none, said funds may be forwarded by Fannie Mae as a protective advance which may be added to the total debt due with interest to accrue thereon, with the express understanding that nothing herein shall obligate Fannie Mae to make any such advance;

t.       Issue receivership certificate(s) or other documentation reasonably requested by Fannie Mae to evidence and secure any advances made by Fannie Mae, subject to Fannie Mae's approval. Such receivership certificate(s) may place additional indebtedness on the Property and be secured by a first lien on the Property, subject to only valid tax liens, as necessary to protect Fannie Mae's interests. Nothing in

27321734.5

    this Order Appointing Receiver shall bind Fannie Mae to make such additional advances.

u.  Prosecute and pursue any and all claims and causes of action under any policy of insurance which relates to the Property or arises from the operations of the Property;

v.  Solicit bids for, procure and make necessary payment of one or more policies of insurance relating to any loss, casualty or damage to or arising from operations at the Property; and

w.  Enter into new rental contracts and leases for vacant units and renew existing rental contracts on reasonable terms for periods not to exceed one year.

x.  At the request of Fannie Mae, market the Property for sale or lease and retain a real estate broker for such purposes; provided, however, any sale of the Property is subject to subject to Fannie Mae's approval and FHFA's consent, and thereafter approval from this Court. In connection with the marketing, sale and management of the Property, the Receiver may retain surveyors, title companies, and conduct environmental assessments, take necessary environmental remedial measures and perform or have performed other engineering and studies.

y.  In order to further facilitate the Receiver's compliance with this Order, at their discretion, may notify of its appointment all necessary local, state, and federal governmental agencies, as well as all vendors, suppliers and contractors, condominium management company and any all others who provide goods or services to the Property ("Third Parties") and shall have the right to request that all Third Parties forward all communications with respect to the Property to the Receiver.

z.  Initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or the Receivership estate subject to Fannie Mae's approval to the extent such settlement shall affect Fannie Mae's security interests in the Property and all related Fannie Mae interests thereto.

23.  Separate from Insurance on Property as set forth in Paragraph 14 of this Order, the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and its employees insurance coverages for (1) professional liability/errors and omissions and, (2) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of $5 million and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of $1 million per claim or four months of revenue using the

27321734.5

agreed budget for the property (collectively these coverages are referred to as "Receiver's Business Insurance").  The Receiver's retained professional Property Manager shall carry the following insurance coverages:(1) excess/umbrella coverage in the minimum amount of $5 million per claim above primary policy limits or a greater amount as required by Fannie Mae; (2)  dishonesty, identity theft, fidelity, cyber (first party and third-party including identity theft resolution and loss control services), general liability coverage (separate from the Insurance on Property as set forth in the paragraph above), business automobile liability, and employer's liability, with each such coverage having a minimum coverage amount of $1 million per occurrence and $2 million in the aggregate;  and (3) worker's compensation with a minimum per claim coverage amount in accordance with state laws. All such Property Manager coverages are collectively referred to as "Property Management Insurance." The Receiver shall be added as an "additional named insured" to Property Management Insurance upon hiring or retention of the Property Manager.  To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages in the same amounts as the required Property Management Insurance. Fannie Mae and FHFA shall be named as additional insureds on the Receiver's Business Insurance and the Property Management Insurance. For the avoidance of doubt, the Receiver, the Property Manager and their employees, as well as any of their agents, attorneys or contractors shall always keep in force the minimum amounts of coverage as set forth in this paragraph for Receiver's Insurance and Property Management Insurance, including applicable tail coverage. Each insurance carrier providing Receiver's Business Insurance and Property Management Insurance, whether admitted or non-admitted, must comply with a minimum (1) A. M. Best Financial Strength Rating of A- and (2) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000.

27321734.5

The premiums for insurance policies and deductibles for all Receiver Business Insurance and Property Management Insurance shall not be expenses of the Receivership estate. The Receiver and the Property Manager will, upon appointment, provide certificates to Fannie Mae evidencing insurance coverages, and thereafter, upon Fannie Mae's request. The Receiver and the Property Manager will promptly notify Fannie Mae of any material change in insurance coverages.

To the extent of the operating and other income from the Property received by the Receiver, the Receiver shall pay all expenses incurred with regard to the Property which were incurred in the normal and ordinary course of business of the Property and which were incurred by the Receiver on or after the Receiver taking possession of the Property.  Neither the Receiver nor Fannie Mae shall be liable for any expenses incurred with regard to the Property incurred prior to the Receiver taking possession of the Property, nor shall the Receiver or Fannie Mae be required to use any rents or other revenues collected after the Receiver takes possession of the Property for payment of any expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property.  Notwithstanding the foregoing, the Receiver may, in the Receiver's sole and absolute discretion and without seeking further Court approval, to the extent of the operating and other income from the Property received by the Receiver, pay those expenses which were incurred in the normal and ordinary course of business of the Property and which were incurred prior to the Receiver taking possession of the Property, _if, and only if_, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (i.e., utilities).  Otherwise, no pre-existing expenses shall be paid by the Receiver.  It shall be incumbent upon the Receiver, in the Receiver's sole and absolute discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver taking possession of the Property were incurred in the normal and ordinary course of business and the payment of which is necessary and

27321734.5

critical to the ongoing operation of the Property.

24. In the event the Receiver makes any repair to the Property or pays any unforeseen operating expenses in excess of $35,000.00 and other than those ordinarily and normally incurred in the operation of the business, the Receiver shall so notify Fannie Mae, directly or through counsel, informing Fannie Mae of the nature and approximate cost of the desired expenditure. Fannie Mae shall respond within three (3) business days of such notice, either authorizing such expenditure or joining with the Receiver in a request for a hearing before the Court to determine whether such expenditure should be authorized. The provisions of this paragraph do not apply to emergency repairs, life safety repairs, or repairs required by applicable city, municipal, or state ordinance or code.

25. Money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be held by the Receiver subject to such orders as this Court may hereafter issue.

26. If funds are needed to finance immediate repairs, management, and security at the Property and to finance the receivership (collectively referred to as "<u>Repair and Receiver Expenses</u>"), then:

   a. The Receiver will first draw funds from the collected rents for the Repair and Receiver Expenses;

   b. If additional funds are needed for Repair and Receiver Expenses, the Receiver may request monetary advances from Fannie Mae in accordance with this Section and Section c below;

   c. Fannie Mae may grant or deny the Receiver's requested monetary advances in its sole and absolute discretion;

   d. Any agreed monetary advance provided by Fannie Mae pursuant to the Receiver's request shall be deemed the obligation of Owner and added to the indebtedness owed to Fannie Mae. Said advance(s) shall be treated as a protective advance which

27321734.5

                may be added to the total debt due with interest to accrue thereon pursuant to Section 4 of the Mortgage;

    e.    The Receiver is prohibited from borrowing from any source other than Fannie Mae and from causing or permitting any liens, deeds of trust, security interests, or other encumbrances to be filed or asserted against the Property, provided, however, that the Receiver may open credit lines for utilities, supplies, services, and insurance needed at the Property.

27.    Subject to the terms of Paragraph 23 and the Receiver's decision to pay such expenses, neither the Receiver nor Fannie Mae shall be liable for any expenses incurred with regard to the Property incurred prior to the Receiver taking possession of the Property, nor shall the Receiver or Fannie Mae be required to use any rents or other revenues collected after the Receiver takes possession of the Property for payment of any expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property.

28.    Except as provided otherwise in this Order, neither Fannie Mae nor the Receiver shall be liable for any obligations (including, without limitation, obligations between, on the one part, Defendant Borrowers, and, on the other part, one or more employees, directors, agents, shareholders, creditors, members, and/or representatives of Defendant Borrowers), whether or not such obligations have been liquidated and whether or not such obligations are conditional, that arose prior to this Order and that relate in any way to the acquisition, ownership, maintenance, operation, financing, sale or use of the Property and of any part of it. If obligated, Defendant Borrowers shall remain liable for all obligations of the Property.

29.    The Receiver, and any party in interest hereto, at any time, on proper notice to the parties who may have appeared in this action, may apply to this Court for further or other instructions and for further powers necessary to enable the Receiver to properly fulfill its duties pursuant to this Order.

30.    The receivership shall terminate with respect to the Property upon the earlier of:

27321734.5

      j.      the sale of the Property by the Receiver (if any), subject to Fannie Mae's approval and FHFA's consent, and thereafter approved by this Court;

      k.      the foreclosure sale of the Property;

      l.      discontinuance of this action at Plaintiff's option or otherwise; or

      m.      further Order discharging the Receiver and terminating the receivership.

31.      The Receiver's compensation, subject to final court approval, shall be an initial start-up fee of $12,500.00, plus a monthly receivership fee of $8,000.00.  The New Property Manager shall be entitled to a management fee equal to four percent (4%) of the total monthly gross collections of income including utility reimbursement or $25,000.00, whichever is greater.  The Receiver is also entitled to reimbursement of reasonable costs and expenses incurred.

32.      Within forty-five (45) days after the termination of the receivership, the Receiver shall pay to Fannie Mae all receipts remaining, if any, to be applied to the indebtedness of the Defendant Borrowers to Fannie Mae, pursuant to the Note.  The Receiver is authorized, but not required, to make any or all of the payments set forth in this paragraph during the pendency of the receivership.

33.      Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties or intentional actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professionals or contractors), second to the Receiver Bond, and third to the Property funds generated by the Property and received by the Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, the Receiver's agents, employees, other professionals, or contractors of Receiver must be brought by motion in this action.

27321734.5

34. For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver will not have personal liability except for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violations of this Court's orders.

35. Subject to Fannie Mae and FHFA's rights and powers under this Order and the Housing and Economic Recovery Act ("HERA"), the Receiver is hereby vested with any and all authority necessary or appropriate, to carry out the intent and purpose of this Order, and to operate and maintain the Property and the Receivership estate. FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Plaintiff's and FHFA's interests at issue herein.

36. Notwithstanding any other term of this Order, Plaintiff and FHFA, as Conservator of Fannie Mae, retain and may exercise without further Court approval any and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Plaintiff's rights under the Loan Documents or FHFA's rights, titles, powers, functions, and protections as Plaintiff's Conservator and successor under HERA. Nothing in this Order is intended to interfere with, or adversely affect, any trustee's sale or other exercise of Plaintiff's or FHFA's rights, nor is the Order intended to constitute a waiver of, or election not to proceed with, any commissioner's sale.

37. The Receiver is acting as a fiduciary and officer of the Court and not as an agent of any party in this matter. Nothing contained in this Order shall be deemed to have conferred upon Fannie Mae the status of mortgagee in possession.

27321734.5

38. No person or entity shall impair the ability of Receiver to obtain the assistance of law enforcement, who shall, as necessary, assist the Receiver in fulfilling its duties.

**IT IS SO ORDERED.**

Date: 8/14/25

JUDGE BRIDGET MEEHAN BRENNAN

Approved by,

*/s/ James W. Sandy*
James W. Sandy (0084246)
**McGlinchey Stafford**
3401 Tuttle Rd., Suite 200
Cleveland, Ohio 44122
Telephone: (216) 378-9914
Facsimile: (216) 274-9201
jsandy@mcglinchey.com
***Counsel for Fannie Mae***


*/s/ Michael S. Tucker*
Michael S. Tucker (0034398)
Alan W. Scheufler (0015557)
Lori Pittman Haas (0077698)
**UB Greensfelder LLP**
1660 West 2nd St.
Suite 1100
Cleveland, Ohio 44113
Telephone: (216) 583-7120
Facsimile: (216) 583-7121
mtucker@ubglaw.com
ascheufler@ubglaw.com
lhaas@ubglaw.com
***Counsel for Defendants***
***Reserve Apartments, Ltd and***
***Reserve Square Apartments, Ltd.***

27321734.5